**AMERICAN STATES INSURANCE COMPANY, Plaintiff,**

v.

**F.H.S., INC., Defendant.**

**Civ. A. No. J92–0644(L)(N).**

United States District Court, S.D. Mississippi, Jackson Division.

Feb. 3, 1994.

Mark Carlson, McCoy, Wilkins, Stephens & Tipton, Jackson, MS, Dennis Cantrell, Bingham, Summers, Welch & Slipiman, Indianapolis, IN, for plaintiff.

Carl Montgomery, Montgomery, Smith–Vanez & McGraw, Canton, MS, Rebecca Cowan, Montgomery, Smith–Vanez & McGraw, John S. Knowles, III, Brantley & Knowles, Jackson, MS, for defendant.

*MEMORANDUM OPINION AND ORDER*

TOM S. LEE, District Judge.

This cause is before the court on the motion of plaintiff American States Insurance Company (American States) for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendant F.H.S., Inc. has responded to the motion and has filed a cross-motion for summary judgment. The court has considered the memoranda of authorities, together with attachments, submitted by the parties and concludes that plaintiff's motion is well taken and should be granted. The court thus concludes that defendant's motion should be denied.

This case involves an insurance policy issued to F.H.S. by American States providing coverage for commercial property and bodily injury liability. The parties' dispute centers around a pollution exclusion contained in the policy which provides:

This insurance does not apply to:

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or

threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented to or loaned to, any insured;

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom the named insured may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations;

(i) if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor, or subcontractor; or

(ii) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

(2) Any loss, or expense arising out of any

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of pollutants; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.

F.H.S. owns and operates a cold storage warehouse and in connection with its operation of that warehouse, secured from American States the policy containing the above-quoted exclusion. The policy was effective April 16, 1992 through April 16, 1993. On July 8, 1992, ammonia leaked from a pressure relief valve on F.H.S.'s refrigeration system at the warehouse. The valve was designed to vent the building in the event of excessive pressure but on that particular occasion, the valve failed and vented when the amount of pressure in the system did not require the valve to operate.

As a result of this ammonia leak, a number of people in the surrounding area were treated at local hospitals and fifteen people made claims against F.H.S. for injury. Thereafter, on October 30, 1992, certain persons claiming to have suffered bodily injury as a result of the ammonia leak filed suit against F.H.S. seeking damages as a result of this incident. F.H.S. made demand on American States for defense and indemnity against the claims against it arising from the July 1992 incident, including the claims in the lawsuit against F.H.S. American States refused F.H.S.'s demand, asserting that the policy did not provide coverage for the claims against F.H.S., and on October 16, 1992, brought the present declaratory judgment action seeking an adjudication that it has no duty under its policy to defend or indemnify F.H.S. for any claims arising out of the July 1992 incident.

The sole issue presented by the parties' motion is whether or not the claims against F.H.S. are excluded from coverage by virtue of the pollution exclusion quoted above. American States argues that the exclusion clearly and unambiguously excludes coverage for the claims; F.H.S., on the other hand, insists that the exclusion, when considered as a whole and when considered in light of the purpose of the exclusion, is ambiguous, and should therefore be strictly construed against American States so as to provide coverage for the claims. It claims, therefore, that it has properly invoked American States' duty to defend and indemnify. It is the court's opinion, having reviewed the parties' briefs and the authorities they have cited, that the exclusion is unambiguous and by its clear terms excludes coverage for the claims at issue.

There is no question here but that the injuries for which claims have been made against F.H.S. are based on an incident involving the "escape or release of" ammonia "from [a] premises, site or location which ... was ... owned by [an] insured." The issue, then, is whether ammonia is a pollutant within the meaning of that term *as defined by the policy*. The policy defines "pollutants" to include any "gaseous ... irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." It is undisputed that ammonia is a gaseous substance. And it is specifically claimed by those alleging that they were injured by the ammonia release that they experienced respiratory irritation as a result of exposure to the ammonia which escaped from F.H.S.'s warehouse. These uncontroverted facts would seem to resolve the question posed by the parties' motions. F.H.S., however, urges that the policy definition of "pollutants" is not quite so straightforward and is, instead, susceptible to more than one interpretation. It reasons, therefore, that the court, in accordance with the rules of construction applicable to insurance contracts, should construe the term, and hence the policy, in the manner that would provide coverage.

F.H.S. argues that this court, for purposes of evaluating the disputed exclusion, should define the term pollution as environmental engineers do, i.e., in quantitative limits; or as it is defined by state law, i.e., "environmental pollution;"[1] or that it should define pollution as "others" do, i.e., as a violation of federal or state environmental quantity laws. And it insists that by defining pollution according to any of these standards, the court would find the policy exclusion ambiguous and would be compelled to conclude that the release of ammonia from its cold storage warehouse did not pollute the air. In support of its position, F.H.S. has submitted the affidavit of David Peaks, an environmental engineer, who opines that the exclusion is "too broad and

ambiguous" since the exclusion does not refer to or include any language limiting the definition "pollutant" in terms of quantitative levels such as are routinely used by environmental scientists, industrial hygienists and safety professionals in determining whether a substance is a pollutant.[2] And, consistent with his professed belief as to what the definition of the term "pollutant" should be,[3] Mr. Peaks expresses his view that the ammonia released into the atmosphere on July 8, 1992 from F.H.S.'s refrigeration system "would not be considered a pollutant by the scientific community since the quantitative amount of ammonia released did not violate the EPA, DEQ or other applicable safety standards, which define what amount of ammonia is considered harmful to the safety of the general public."

In the court's opinion, Mr. Peaks' affidavit does not substantiate F.H.S.'s position in this action, nor, in the court's opinion, is it relevant in any respect on the issue of whether the policy exclusion is ambiguous. Though Mr. Peaks, or the scientific community, would define the terms "pollutant" and/or "pollution" in a way other than that reflected by this insurance policy, and though the definition the scientific community would employ would recognize limitations which are not imposed by the policy under consideration, those facts do not render the definition in the policy ambiguous or less clear. The exclusion is broader than F.H.S. suggests it is or should be. But, it is not limited in the manner suggested by F.H.S. or Mr. Peaks and, unless the court were to find the exclusion ambiguous on its face, the court would lack the prerogative to engraft limitations on the exclusion as it appears in the policy.

The proposition that the determination of whether a contract is ambiguous is a question of law to be determined solely by reference to the contract is too well established to require the citation of authority. Extrinsic

---

1. *See* Miss.Code Ann. § 49–17–5(2)(b).

2. According to Mr. Peaks' interpretation, the definition of "pollutant" in the policy would exclude coverage for such run-of-the-mill occurrences as, *inter alia*, the release of soap or other cleaning solutions from sinks and toilets, or the release of water from air conditioners or cooling units.

3. Mr. Peaks specifically opines that the definition contained in the American States policy "should not be used to establish exclusions involving acts of pollution for insurance purposes."

evidence is not admitted to demonstrate that an ambiguity exists. Here, F.H.S. seeks to introduce such extrinsic evidence for the purpose of demonstrating ambiguity. The court must disregard Mr. Peaks' affidavit.

The court is aware, of course, that some courts have found identical and similar pollution exclusion provisions to be ambiguous. *See, e.g., Minerva Enterprises v. Bituminous Cas. Corp.,* 312 Ark. 128, 851 S.W.2d 403 (1993); *West American Ins. Co. v. Tufco Flooring,* 104 N.C.App. 312, 409 S.E.2d 692 (1991). This court, though, has scrutinized the language in the policy and fails to perceive any such ambiguity. And like this court, most courts that have considered the exclusion at issue here have found that no ambiguity exists. *See, e.g., O'Brien Energy Systems, Inc. v. American Employer's Ins. Co.,* 427 Pa.Super. 456, 629 A.2d 957 (Sup.Ct. Pa.1993); *Crabtree v. Hayes–Dockside, Inc.,* 612 So.2d 249 (La.Ct.App.1992); *Alcolac, Inc. v. California Union Ins. Co.,* 716 F.Supp. 1546 (D.Md.1989); *Guilford Indus. Inc. v. Liberty Mut. Ins. Co.,* 688 F.Supp. 792 (D.Me.1988), *aff'd,* 879 F.2d 853 (1st Cir. 1989); *League of Minnesota Cities Ins. Trust v. City of Coon Rapids,* 446 N.W.2d 419 (Minn.Ct.App.1989).

F.H.S. asks that this court, in essence, ignore the policy definition of "pollutants" or, perhaps more accurately, limit the term so that it is defined in the manner employed by environmental engineers, and thereby create coverage not provided by the policy. The court reiterates that it is not free to rewrite the terms of the insurance contract where that contract is not ambiguous. In this case, regardless of what is or might be a preferable definition from F.H.S.'s standpoint, or what would be the definition of choice from Mr. Peaks' perspective, or the perspective of the scientific community, the policy definition of "pollutant," and the pollution exclusion construed as a whole is clear and unambiguous.[4] Moreover, the claims that have been asserted against F.H.S. fall well within the exclusion. The court concludes, therefore,

that summary judgment should be entered for American States. It follows, that F.H.S.'s cross-motion for summary judgment must be denied.

Accordingly, it is ordered that the motion of American States for summary judgment is granted. It is further ordered that the cross-motion of F.H.S. for summary judgment is denied.

---

4. F.H.S. has presented the affidavit of its president, Edward Cochran, who states that upon securing the insurance policy in question, he intended that it would provide coverage for all aspects of F.H.S.'s everyday operation. But the policy language controls. If that language were ambiguous, then Mr. Cochran's intention would become relevant. But in light of the court's conclusion that the exclusion is not ambiguous, Mr. Cochran's intentions cannot be considered.