United States Court of Appeals,

Fifth Circuit.

No. 95-60175.

AMERICAN STATES INSURANCE COMPANY, Plaintiff-Appellant,

v.

Mary Jane NETHERY, et al., Defendants-Appellees.

April 9, 1996.

Appeal from the United States District Court for the Northern District of Mississippi.

Before POLITZ, Chief Judge, and JONES and BENAVIDES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

American States Insurance Company ("American States") filed suit seeking a declaration of rights under its policy relating to claims brought against its insureds, painting and repair contractors and a franchisor, by customer Mary Jane Nethery ("Nethery"). The district court granted partial judgment as a matter of law to the insureds, and American States appeals. We hold that Nethery's claim that her hypersensitivity to chemicals was inflamed by fumes from standard paint and glue materials is excluded by the absolute pollution exclusion from American States's comprehensive general liability policy. Accordingly, we reverse and render judgment for American States.

## I. BACKGROUND

The facts are not disputed. In 1991, Nethery, through her insurer, hired DAPA, Inc. d/b/a ServiceMaster of Tupelo, Mississippi ("DAPA"), to paint portions of the interior walls and

1

replace sections of the floor of her home. Because of Nethery's "chemical hypersensitivity," she alleged that she explicitly contracted for the repairs to be made with special paint and glue that would be "non-toxic" to her. DAPA, nonetheless, repaired Nethery's home with regular industry standard paint and glue.

Nethery contends she is allergic to the chemical 1,1,1 trichloroethane ("1,1,1 tca") in the regular paint and glue and that fumes from these materials injured her and caused the loss of the use of part of her home. In state court, she sued DAPA, its president Danny Miles, its franchisor, The ServiceMaster Limited Partnership ("ServiceMaster") (collectively, "the insureds"), and others not parties to the instant case, alleging breach of contract, gross negligence, and intentional infliction of emotional distress. The insureds made demand upon American States for defense and coverage of Nethery's claims. American States defended under a reservation of rights and filed this declaratory action.

Responding to cross-motions, the district court granted partial judgment as a matter of law to American States and held that the insurer did not have a duty to defend against Nethery's claims for breach of contract and intentional infliction of emotional distress. The court also held, however, that American States had a duty to defend against Nethery's gross negligence claim and that such claim was not barred from coverage by the pollution exclusion.

American States has appealed, contending that the district court erred in concluding that its policy covers gross negligence,

and contending that the absolute pollution exclusion does apply to bar Nethery's claim. We need not reach the former argument, because the latter one is dispositive.

## II. DISCUSSION

We review the district court's grant of summary judgment and its interpretation of American States's insurance policy *de novo,* applying the same standards as the district court. *Constitution State Ins. Co. v. Iso-Tex, Inc.,* 61 F.3d 405, 407 (5th Cir.1995). Under Mississippi law, courts interpret insurance policies according to contract law. *Aero Int'l, Inc. v. United States Fire Ins. Co.,* 713 F.2d 1106, 1109 (5th Cir.1983) (applying Miss. law). This interpretation is limited to the written terms of the policy. *Id.* If the policy is unambiguous, its terms must be given their plain meaning and enforced as written. *Id.* Only if the policy is ambiguous will it be interpreted in the light most favorable to the insured. *Nationwide Mut. Ins. Co. v. Garriga,* 636 So.2d 658, 662 (Miss.1994).

With regard to insurance, Mississippi is a "decision-poor" state. Mississippi state courts have not interpreted any pollution exclusions. We are thus left to make an "*Erie* guess" about the instant policy's coverage.

American States's absolute pollution exclusion provides in pertinent part:

This policy does not apply to:

f.(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants;

3

* * * * * *

    (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

* * * * * *

    (I) if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor;

* * * * * *

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.

The district court concluded this exclusion was unambiguous and that it did not exclude Nethery's claim. The court reasoned that paint and glue fumes do not constitute pollutants because they do not "normally inflict injury." It explained that, under the exclusion, "all pollutants are irritants. But that does not make all irritants pollutants."

While acknowledging the exclusion is unambiguous, American States rejects the district court's reasoning that not all irritants are pollutants. It contends that the exclusion defines a pollutant as "any ... irritant." Therefore, it argues, the district court impermissibly altered the policy's terms by defining a pollutant as only a substance which normally inflicts injury. *See Maryland Cas. Co. v. Southern Farm Bureau Cas. Ins. Co.,* 235 F.2d 679, 683 (5th Cir.1956) (Mississippi law prohibits courts from re-writing unambiguous insurance exclusions).

We agree with American States; the absolute pollution

4

exclusion does unambiguously exclude coverage for Nethery's claim. "Pollutant" is a defined term in the policy. Whether the policy definition comports with this court's notion of the usual meaning of "pollutants" is not the issue; this court has no special expertise in writing insurance policies. Our judgment about the reasonable scope of a pollution exclusion—in the absence of ambiguity—must be tied to the language of the policy. Nethery contends she suffered bodily injury and property damage from the "discharge, dispersal ... release or escape of pollutants ... at or from any premises on which the insured [was] working." "Pollutants" is defined in the policy as "any ... gaseous ... irritant or contaminant, including ... vapor ... fumes ... [and] chemicals." The paint and glue fumes fall under the definition of gaseous substances, vapors, and fumes, while the 1,1,1 tca in the paint and glue is plainly a chemical.

Despite the patent applicability of the pollutant exclusion here, it is contended that paint and glue fumes do not constitute an "irritant" because they do not normally inflict injury. This argument might have made sense under a differently worded policy, but here it does not. Although the policy does not define "irritant," Webster's Dictionary defines it as "an agent by which irritation is produced (a chemical)." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY UNABRIDGED 1197 (1981). An irritant is a substance that produces a *particular* effect, not one that generally or probably causes such effects. The paint and glue fumes that irritated Nethery satisfy both the dictionary definition and the policy

5

exclusion of irritants.

The same conclusion was reached by the court in *American States Ins. Co. v. F.H.S., Inc.,* 843 F.Supp. 187 (S.D.Miss.1994), interpreting an identical pollution exclusion. The insured in *F.H.S.* sought coverage for claims brought by plaintiffs exposed to ammonia gas released from its warehouse. The amount of ammonia released, however, was not sufficient to normally cause injury, was not considered a pollutant by environmental engineers, and did not violate any environmental or safety regulations. *Id.* at 189-90. The insurer argued the plaintiffs' claims were excluded by the pollution exclusion.

The *F.H.S.* court agreed. It found the exclusion unambiguous and concluded that the released ammonia constituted a pollutant, i.e. a gaseous substance, released from the insured's premises, which allegedly irritated the plaintiffs. The court rejected the argument that the ammonia should not be considered a pollutant because the quantity released was not sufficient to irritate most persons. That fact was not

> relevant in any respect on the issue of whether the policy exclusion is ambiguous. Though [the environmental expert], or the scientific community, would define the terms "pollutant" and/or "pollution" in a way other than that reflected by this insurance policy, and though the definition the scientific community would employ would recognize limitations which are not imposed by the policy under consideration, those facts do not render the definition in the policy ambiguous or less clear.... [U]nless the court were to find the exclusion ambiguous on its face, the court would lack the prerogative to engraft limitations on the exclusion as it appears in the policy.

\* \* \* \* \* \*

[The insured] asks that this court, in essence, ignore

6

the policy definition of "pollutants" or, perhaps more accurately, limit the term so that it is defined in a manner employed by environmental engineers, and thereby create coverage not provided by the policy....  [T]he pollution exclusion construed as a whole is clear and unambiguous. Moreover, the claims that have been asserted against [the insured] fall well within the exclusion.

*Id.* at 190 (footnote omitted).

In the instant case, the district court distinguished *F.H.S.* on the basis that "paint fumes do not normally inflict injury, but [ ] ammonia does."  This is unpersuasive.  *F.H.S.* held that the ammonia constituted a pollutant despite the fact that considering the amount and circumstances of its release it would not generally cause injury.  Moreover, the chemical 1,1,1 tca in the paint and glue fumes is listed by the EPA as a hazardous substance. Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. § 9601 *et seq.*  As the paint and glue container labels attest, the chemical fumes are not benign and may inflict injury.  The district court's proffered distinction fails logically and factually.

The insureds, however, urge that the instant pollution exclusion is not so straightforward and that other courts have created exceptions to such exclusions in unusual circumstances. Initially, they and the district court cite *Westchester Fire Ins. Co. v. City of Pittsburg, Kansas,* 768 F.Supp. 1463 (D.Kan.1991), *aff'd sub nom., Penn. Nat. Mut. Cas. Ins. Co. v. City of Pittsburg, Kansas,* 987 F.2d 1516 (10th Cir.1993), for the proposition that the pollution exclusion should not apply to an insured's liability arising from the normal operations of its business.  The vitality

7

of that court's holding is questionable, because the Tenth Circuit affirmed the judgment on explicitly different grounds.[1] Be that as it may, the *Westchester Fire* court based its conclusion, that the exclusion did not apply to a plaintiff's claim arising from the insured city's spraying of pesticides, on grounds not applicable to the instant case.

One, *Westchester Fire* was based on the reasonable expectations of the parties in contracting for insurance. *Id.* at 1470. Mississippi courts do not apply this doctrine in interpreting unambiguous insurance policies. *E.g., Cherry v. Anthony, Gibbs, Sage,* 501 So.2d 416, 419 (Miss.1987). Two, the court explained that the pollution exclusion applies only to "commonly understood environmental degradation ... such as waste water treatment, smokestack emissions, or dumping at a landfill." 768 F.Supp. at 1470 & n. 9. We disagree. The pollution exclusion at issue encompasses more than traditional conceptions of pollution. *See Red Panther Chem. Co. v. Ins. Co. of the State of Penn.,* 43 F.3d 514 (10th Cir.1994) (applying Mississippi law) (reviewing cases).

Further, the insureds cite *Red Panther Chem. Co. v. Ins. Co. of the State of Penn.,* 43 F.3d 514 (10th Cir.1994) (applying Miss. law), for the proposition that the policy is ambiguous. *Red Panther* addressed whether the policy excluded coverage when a

---

[1]The Tenth Circuit affirmed the district court's holding that "the terms of the policy nonetheless provide coverage [because] the discharge was "sudden or accidental.' " 987 F.2d at 1519. The circuit court explained "[i]t is unnecessary to consider [the insurer's] argument that the City was spraying a "pollutant.' " *Id.*

mechanic was injured by breathing fumes from pesticides which had been spilled by the insured on a car he was inspecting. The court found the pollution exclusion ambiguous because it was not clear whether the term "escape" encompassed the series of events leading to the mechanic's injuries. As the court's reasoning did not reach the definition of pollutants, it is inapplicable to the instant case.

Finally, the insureds cite *West American Ins. Co. v. Tufco Flooring East, Inc.,* 104 N.C.App. 312, 409 S.E.2d 692 (1991), for the proposition that the pollution exclusion does not apply to the use of "unadulterated" products in the insured's normal business operations. The *Tufco* court found the exclusion did not preclude coverage for injuries to a food processor's chickens caused by styrene fumes emanating from floor varnish applied by the insured. *Tufco* is, however, distinguishable.

Most significantly, the *Tufco* court ruled the exclusion was expressly inapplicable to and overridden by the policy's supplemental "products-completed operations hazard" clause, which did cover the plaintiff's claim. 409 S.E.2d at 696. The instant policy contains no such clause. *Tufco* also relied on the reasonable expectations doctrine, which Mississippi courts do not apply in interpreting unambiguous contracts. *Id.* at 697.

After finding the pollution exclusion ambiguous, the *Tufco* court reasoned that the exclusion did not apply to "pure, useful or valuable" substances, but only to "something creating an impurity, something objectionable and unwanted." *Id.* at 698. It found that,

9

although the styrene fumes were unwanted, the floor varnish from which they emanated had been deliberately chosen. Such semantics cannot be applied here. Both the fumes and the "toxic" paint and glue were unwanted by Nethery. Also, numerous courts have found substances constituted pollutants regardless of their ordinariness or usefulness. *E.g., U.S. Fire Ins. Co. v. Ace Baking Co.,* 164 Wis.2d 499, 476 N.W.2d 280, 283 (Ct.App.1981), *review denied,* 479 N.W.2d 173 (Wis.1991) ("Just as "what is one man's meat is another man's rank poison,' Lucretius, *De Rerum Natura,* 293 (W.H.D. Rouse trans. 3rd ed. 1947), it is a rare substance indeed that is always a pollutant; the most noxious of materials have their appropriate and non-polluting uses. Thus, for example, oil will "pollute" water and thus foul an automobile's radiator, but be essential for the engine's lubrication.")[2]

In sum, none of the cases cited by appellees persuades, much less compels us to conclude that American States's absolute pollution exclusion is ambiguous and does not exclude Nethery's claim.

ServiceMaster attempts to appeal the district court's holding that American States had no duty to defend it against Nethery's breach of contract and intentional infliction of emotional distress

---

[2]*See also Essex Ins. Co. v. Tri-Town Corp.,* 863 F.Supp. 38 (D.Mass.1994) (carbon monoxide from hockey rink's Zamboni machine constituted a pollutant); *Crabtree v. Hayes-Dockside, Inc.,* 612 So.2d 249 (La.App.1992), *writ denied,* 614 So.2d 1257 (La.1993) (dust escaping during packing operations constituted a pollutant); *Demakos v. Travelers Ins. Co.,* 205 A.D.2d 731, 613 N.Y.S.2d 709, 710 (1994) (passive cigarette smoke constituted a pollutant).

claims.  Unfortunately, the franchisor did not file a notice of cross-appeal and has not shown why its failure to do so should be excused.  "The rule is well established, [ ] that without the filing of a cross-appeal, an appellee may not attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary, whether what he seeks is to correct an error or to supplement the decree with respect to a matter not dealt with below."  *Robicheaux v. Radcliff Material, Inc.,* 697 F.2d 662, 668 (5th Cir.1983) (internal quotations and citations omitted).  ServiceMaster's arguments are not properly before this court.

### III. CONCLUSION

The judgment of the district court is **REVERSED** and judgment is **RENDERED** for American States.