United States Court of Appeals,

Fifth Circuit.

No. 96-20698.

CERTAIN UNDERWRITERS AT LLOYD'S LONDON, London & Hull Maritime
Insurance Company Ltd., Commercial Union Assurance Company,
Northern Assurance Company Ltd. No. 6 A/C, The Prudential Assurance
Company Ltd., Ocean Marine Insurance Company Ltd., Hansa Marine
Insurance Company (UK) Ltd., Vesta (UK) Insurance Company Ltd.,
Bishopsgate Insurance PLC, Minster Insurance Company Ltd.,
Plaintiffs-Appellees,

v.

C.A. TURNER CONSTRUCTION COMPANY, INC. and T.C.I., Inc.,
Defendants-Appellants.

May 8, 1997.

Appeal from the United States District Court for the Southern
District of Texas.

Before DAVIS, SMITH and DUHÉ, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

C.A. Turner Construction Company and its subsidiary, T.C.I.,
Inc., appeal a declaratory judgment that a clause in their
insurance policy excludes coverage for a personal injury suit
arising from the discharge of chemical fumes. Because the
exclusion clause unambiguously applies, we affirm the district
court's summary judgment order.

I.

This declaratory judgment action arises from a March 14, 1990,
incident in which William Galbreath, a pipe-fitter for T.C.I., was
injured while welding pipe at a Texaco chemical plant in Port
Neches, Texas. At the time, Galbreath and two other employees were
outdoors engaged in welding two flanges onto the ends of a

separated pipe.  The workers were standing on scaffolding that was enclosed in a plastic tent to protect them and the pipe under repair from rain.  Rags had been stuffed into the pipe to prevent chemical leakage.  When the rags were removed from the pipe, either the rags or the chemical in the pipe made contact with the hot pipe that had just been welded;  as a result, a cloud of phenol gas was created.  Galbreath testified that he dove toward the entrance of the plastic tent to escape the gas and suffered injuries through inhalation of the gas and the fall.

On January 15, 1992, Galbreath instituted a state court lawsuit for damages against C.A. Turner, T.C.I., and Texaco.  C.A. Turner requested that its insurance carrier, Certain Underwriters at Lloyd's London, et al.  (Underwriters), undertake the legal defense and indemnify C.A. Turner for any damages.  In response, Underwriters denied that it provided coverage for the claim and denied any duty to defend.  According to Underwriters, an "absolute pollution exclusion" clause in its insurance policy excluded coverage for claims arising out of pollution-related bodily injuries.

On September 5, 1995, Underwriters brought this action seeking a declaratory judgment that its denial of coverage was proper.  The district court granted Underwriters' motion for summary judgment.  C.A. Turner and T.C.I. appeal that order.[1]

_____

[1]After the district court granted summary judgment, the underlying state litigation filed by Galbreath against Texaco, C.A. Turner, and T.C.I. was settled for $85,000.  Pursuant to its contractual indemnity obligations to Texaco, C.A. Turner paid the entire settlement.  Texaco has elected not to participate in this

This court reviews the district court's grant of summary judgment and its interpretation of an insurance contract *de novo.* *American States Ins. Co. v. Nethery,* 79 F.3d 473, 475 (5th Cir.1996). The parties agree that Texas law governs this case. Under Texas rules of contractual interpretation, if an insurance contract is expressed in unambiguous language, its terms will be given their plain meaning and it will be enforced as written. *Puckett v. U.S. Fire Ins. Co.,* 678 S.W.2d 936, 938 (Tex.1984). If, however, a contract is susceptible to more than one reasonable interpretation, a court will resolve any ambiguity in favor of coverage. *Id.*

The pollution exclusion clause at issue provides:

[I]t is hereby understood and agreed that this policy is subject to the following exclusion[ ] and that this policy shall not apply to:

.   .   .   .   .

Liability for any bodily and/or personal injury to or illness or death of any person or loss of, damage to, or loss of use of property directly or indirectly caused by or arising out of seepage into or onto and/or pollution and/or contamination of air, land, water and/or any other property and/or any person irrespective of the cause of the seepage and/or pollution and/or contamination, and whenever occurring.

Appellants argue that the exclusion clause is inapplicable to the welding accident because the fumes were confined to the temporary tent over the scaffolding and only one individual and no property was injured. According to appellants, the ordinary meaning of pollution encompasses only widespread releases of hazardous

appeal.

substances into the environment.  Because the policy does not define "pollution," "contamination," or "seepage," they contend, the terms must be limited to their ordinary meaning.

Applying Texas principles of construction, we must determine whether the plain language of the pollution exclusion clause unambiguously barred coverage for injuries related to this chemical release.  A Texas Supreme Court case examining analogous clauses provides a starting point for our analysis.  In *National Union Fire Ins. Co. v. CBI Indus., Inc.,* 907 S.W.2d 517 (Tex.1995), insurers claimed that absolute pollution exclusions[2] barred coverage for an accidental refinery explosion that produced a toxic hydroflouric acid cloud over a city.  One policy defined "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and

---

[2]The National Union policy at issue stated:

> This policy does not apply to ... any Personal Injury or Property Damage arising out of the actual or threatened discharge, dispersal, release or escape of pollutants, anywhere in the world;  ... "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material.  Waste materials include materials which are intended to be or have been recycled, reconditioned or reclaimed.

*Id.* at 519.  Two other policies included provisions closer to the one this court now considers:

> Notwithstanding anything to the contrary contained in this policy, this policy is amended in that it shall not apply to any claim or claims:  For personal injuries or property damages directly or indirectly caused by seepage or pollution or contamination of air, land, water or any other property, however caused and whenever occurring.

*Id.*

4

waste material." *Id.* at 519. Two other policies at issue did not define pollution; however, like the policy here, they excluded coverage for injuries caused by seepage, pollution, or contamination. *Id.*

The insured argued that the policies contained patent and latent ambiguities by virtue of the pollution exclusion clauses because the parties did not intend the exclusions to cover "accidental" releases. *Id.* at 521. The court found no patent ambiguity because the policies' language, on its face, was clear. *Id.* Likewise, the court found no latent ambiguity: "Applying the policies' language to the context of the claim here does not produce an uncertain or ambiguous result, but leads only to one reasonable conclusion: the loss was caused by a cloud of hydrofluoric acid, a substance which is clearly a "pollutant' for which coverage is precluded." *Id.* at 521. Because "the policies unequivocally den[ied] coverage for damage resulting from pollutants, however the damage is caused," the court refused to consider extrinsic evidence that could contradict or vary the meaning of the explicit contractual language. *Id.* at 521-22.

In *Constitution State Ins. Co. v. Iso-Tex Inc.,* 61 F.3d 405 (5th Cir.1995), this court reached the same conclusion in a case also arising under Texas law. Iso-Tex, the insured, sought coverage for claims related to its alleged deposit of radioactive materials near residences. Iso-Tex contended that because nuclear material was covered by a separate policy exclusion, nuclear waste was not clearly a pollutant under the pollution exclusion clause.

5

*Id.* at 409. The court, construing Texas law and relying largely on the Texas Supreme Court's decision in *CBI,* accorded this argument no weight and concluded that the clause unambiguously excluded radioactive waste. *Id.*

Appellants seek to distinguish both *CBI* and *Iso-Tex* on the ground that those cases involved clear instances of traditional environmental pollution rather than a simple workplace accident. Certainly, some jurisdictions have distinguished between discharges that cause environmental harm and discharges that do not and have concluded that exclusion clauses may be ambiguous when applied outside the context of environmental pollution.[3] On the other hand, a number of courts, including this one, have examined the plain language of the same or similar exclusions and concluded that they preclude coverage of liability arising out of releases that do not cause widespread environmental harm.[4] In *American States Ins.*

_____

[3]*See, e.g., Lumbermens Mut. Cas. Co. v. S-W Industries, Inc.,* 39 F.3d 1324 (6th Cir.1994); *Regional Bank of Colorado v. St. Paul Fire & Marine Ins. Co.,* 35 F.3d 494 (10th Cir.1994); *Sargent Const. Co. v. State Auto. Ins. Co.,* 23 F.3d 1324 (8th Cir.1994); *Island Associates, Inc. v. Eric Group, Inc.,* 894 F.Supp. 200 (W.D.Pa.1995); *Westchester Fire Ins. Co. v. City of Pittsburg, Kan.,* 794 F.Supp. 353 (D.Kan.1992), *aff'd,* 987 F.2d 1516 (10th Cir.1993); *American States Ins. Co. v. Kiger,* 662 N.E.2d 945 (Ind.1996); *Atlantic Mut. Ins. Co. v. McFadden,* 413 Mass. 90, 595 N.E.2d 762 (1992); *Continental Cas. Co. v. Rapid-American Corp.,* 80 N.Y.2d 640, 593 N.Y.S.2d 966, 609 N.E.2d 506 (1993); *Karroll v. Atomergic Chemetals Corp.,* 194 A.D.2d 715, 600 N.Y.S.2d 101 (N.Y.App.Div.1993).

[4]*See Park-Ohio Indus., Inc. v. Home Indemn. Co.,* 975 F.2d 1215 (6th Cir.1992); *Brown v. American Motorists Ins. Co.,* 930 F.Supp. 207 (E.D.Pa.1996); *Bituminous Cas. Corp. v. RPS Co.,* 915 F.Supp. 882 (W.D.Ky.1996); *Essex Ins. Co. v. Tri-Town Corp.,* 863 F.Supp. 38 (D.Mass.1994); *Larsen Oil Co. v. Federated Service Ins. Co.,* 859 F.Supp. 434 (D.Or.1994), *aff'd,* 70 F.3d 1279 (9th Cir.1995); *American States Ins. Co. v. Zippro Constr. Co.,* 216 Ga.App. 499,

6

*Co. v. Nethery,* 79 F.3d 473 (5th Cir.1996), the plaintiff filed suit against painting and repair contractors, alleging that fumes from paint and glue used in her home had injured her. *Id.* at 474. The contractors demanded that their insurer, American States, provide their legal defense, and the insurer, in turn, filed a declaratory action alleging that the policy's absolute pollution exclusion barred the claim under Mississippi law. *Id.* at 475. The insureds argued that paint and glue fumes did not constitute pollutants because they do not ordinarily inflict injury. *Id.* at 476. After reviewing several cases in which similar substances were held to be pollutants, this court concluded that "[t]he pollution exclusion at issue encompasse[d] more than traditional conceptions of pollution" and, therefore, excluded coverage. *Id.* at 477.

Guided by the language of the pollution exclusion clause and

455 S.E.2d 133 (1995); *Economy Preferred Ins. Co. v. Grandadam,* 275 Ill.App.3d 866, 212 Ill.Dec. 190, 656 N.E.2d 787 (1995); *Bernhardt v. Hartford Fire Ins. Co.,* 102 Md.App. 45, 648 A.2d 1047 (1994), *cert. granted,* 337 Md. 641, 655 A.2d 400 (1995); *League of Minnesota Cities Ins. Trust v. City of Coon Rapids,* 446 N.W.2d 419 (Minn.App.1989); *Demakos v. Travelers Ins.* Co., 205 A.D.2d 731, 613 N.Y.S.2d 709 (N.Y.App.Div.1994); *Madison Constr. Co. v. Harleysville Mut. Ins. Co.,* 451 Pa.Super. 136, 678 A.2d 802 (1996), *appeal granted,* --- Pa. ----, 690 A.2d 711 (Pa.1997); *Cook v. Evanson,* 83 Wash.App. 149, 920 P.2d 1223 (1996); *Donaldson v. Urban Land Interests, Inc.,* 205 Wis.2d 404, 556 N.W.2d 100 (Wis.App.1996), *review granted,* 207 Wis.2d 285, 560 N.W.2d 273 (1996); *see also CBI,* 907 S.W.2d at 522 n. 8 (citing cases from a number of jurisdictions concluding that similar absolute pollution exclusions were clear and unambiguous); *Tri County Svc. Co. v. Nationwide Mut. Ins. Co.,* 873 S.W.2d 719, 721 (Tex.App.—San Antonio 1993, writ denied) ("On the basis of the plain meaning of the exclusion in question, virtually all courts in other jurisdictions which have considered such an exclusion have found that it precludes all coverage of any liability arising out of the release of pollutants.").

the Texas Supreme Court's decision in *CBI,* we conclude that coverage for damage resulting from the release of phenol gas is likewise excluded.  The clause clearly excludes "[l]iability for any bodily and/or personal injury ... directly or indirectly caused by or arising out of seepage into or onto and/or pollution and/or contamination of air, land, water and/or any other property and/or any person *irrespective of the cause of the seepage and/or pollution and/or contamination, and whenever occurring.*"  The clause does not limit its application to only those discharges causing environmental harm;  in contrast, it speaks broadly of "[l]iability for *any* bodily or personal injury."  This language is not ambiguous;  a plain reading of the clause dictates the conclusion that all damage caused by pollution, contamination, or seepage is excluded from coverage.  Although the policy itself does not define these terms, pollution has been defined as "[c]ontamination of air ... by the discharge of harmful substances." *Webster's II New Riverside University Dictionary* 911 (1984).  Here, Galbreath's injuries stemmed from the discharge of phenol gas that contaminated the air inside the tent enclosing the scaffolding;  the release of the toxic chemical allegedly rendered him unable to breathe.  Thus, the phenol gas emission constituted bodily-injuring pollution or contamination, and coverage for C.A. Turner's claim is precluded under the pollution exclusion clause.

Additionally, while the Texas Supreme Court has not faced the application of a pollution exclusion clause in this context, our conclusion that coverage is excluded is consistent with *CBI* 's

8

broad language. The *CBI* court specifically stated that the pollution exclusion clauses in that case "unequivocally deny coverage for damage resulting from pollutants, *however the damage is caused." CBI,* 907 S.W.2d at 522 (emphasis added). This language does not support a distinction between environmental pollution and workplace contamination.

We appreciate the difficulty inherent in defining the scope of a pollution exclusion clause when the damage-causing incident involves a commonly used chemical or when only a slight amount of substance is released. As the Seventh Circuit has noted:

> The terms "irritant" and "contaminant," when viewed in isolation, are virtually boundless, for "there is virtually no substance or chemical in existence that would not irritate or damage some person or property." Without some limiting principle, the pollution exclusion clause would extend far beyond its intended scope, and lead to some absurd results. To take but two simple examples, reading the clause broadly would bar coverage for bodily injuries suffered by one who slips and falls on the spilled contents of a bottle of Drano, and for bodily injury caused by an allergic reaction to chlorine in a public pool. Although Drano and chlorine are both irritants or contaminants that cause, under certain conditions, bodily injury or property damage, one would not ordinarily characterize these events as pollution.

*Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.,* 976 F.2d 1037, 1043 (7th Cir.1992) (citations omitted). We agree with the Seventh Circuit's common-sense approach. However, we do not believe that our conclusion offends that approach in view of the substantial nature of the discharge that occurred here. According to Galbreath's deposition testimony, once the rags were removed from the pipe, "it was just like somebody .... threw a smoke bomb in there. I couldn't even see—couldn't see a hand in front of your face." The emission of the harmful fumes filled up a temporary

9

plastic tent that enclosed scaffolding intended to support at least three people.  The scope of this release distinguishes it from the Seventh Circuit's example of the spill of a bottle of Drano and supports our conclusion.

Appellants also contend that a "Seepage and Pollution Buy-Back Clause" in the insurance policy is ambiguous.[5]  Under that provision, coverage of occurrences excluded under the pollution exclusion clause is reinstated when four conditions are satisfied. Generally, it allows coverage for some unintentional releases when proper notice is given the insurer.  To satisfy the notice provision, the insured must show that "[t]he occurrence became known to the assured within 168 hours after its commencement and was reported to Underwriters within 90 days thereafter."  Because

---

[5]That clause provides, in pertinent part:

*Seepage and Pollution Buy-Back (168 Hour Clause)*

Notwithstanding the absolute seepage and pollution exclusion contained in this policy, these shall not apply provided that the assured establishes that [ ] all the following conditions have been met.

A.  The occurrence was sudden and accidental and was neither expected nor intended by the assured.  An accident shall not be considered unintended or unexpected unless caused by some intervening event neither expected nor intended by the assured.

B.  The occurrence can be identified as commencing at a specific time and date during the term of this policy.

C.  The occurrence became known to the assured within 168 hours after its commencement and was reported to Underwriters within 90 days thereafter.

D.  The occurrence did not result from the assured's intentional and willful violation of any government statute, rule or regulation.

10

appellants failed to comply with this notice requirement, coverage for the occurrence here was not reinstated.[6] Appellants argue, however, that the clause is ambiguous because nothing in the policy distinguishes between an occurrence that falls within the scope of the pollution exclusion—requiring compliance with the special notice provisions of this clause—and one that does not.

In effect, this argument simply revisits appellants' earlier contention that the pollution exclusion clause itself is ambiguous because it does not clearly define what constitutes pollution. The district court concluded that, like the exclusion clause, "the language of the "buy-back' clause is unambiguous and must be enforced according to its "plain meaning.' " *Certain Underwriters at Lloyd's London v. C.A. Turner Constr. Co.,* 941 F.Supp. 623, 629 (S.D.Tex.1996). We agree. Preliminary language in the buy-back clause specifically references the pollution exclusion clause; under the "plain meaning" of the clause, the "occurrence" in the buy-back clause is the activity discussed in the pollution exclusion clause. Because we concluded that the pollution exclusion clause was unambiguous under Texas law, we likewise conclude that the buy-back clause is subject to only one reasonable interpretation.

### III.

---

[6]Under Texas law, notice provisions are enforceable. *See, e.g., Harwell v. State Farm Mut. Auto. Ins. Co.,* 896 S.W.2d 170, 174-75 (Tex.1995) (holding that insurer was not bound by judgment against insured where insured failed to notify insurer of pending lawsuit as policy required and lack of notice prejudiced insurer).

For these reasons, the district court summary judgment is AFFIRMED.

AFFIRMED.