# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 22, 2009

Charles R. Fulbruge III
Clerk

No. 08-50652

NAUTILUS INSURANCE COMPANY

Plaintiff - Appellee

v.

COUNTRY OAKS APARTMENTS LTD.

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas

Before GARWOOD, OWEN, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

Once again we address the scope of the absolute pollution exclusion in an insurance policy under Texas law. Concluding that the exclusion unambiguously applies to exclude liability coverage for injuries caused to Kaia Alvarado by the pollutant carbon monoxide seeping, discharging, releasing and dispersing into an apartment owned by Appellant and leased by Kaia's mother, we AFFIRM the district court's grant of summary judgment.

## I. Background

Appellant Country Oaks Apartments Ltd. (Country Oaks) purchased a Commercial General Liability (CGL) policy from Appellee Nautilus Insurance Company (Nautilus). Some time during the policy period, some workers

accidentally blocked the vent to the furnace in several Country Oaks apartments, including the one in which Kelly Schenks, who was pregnant with Kaia, lived. As a result, carbon monoxide that otherwise would have been dispersed into the outside atmosphere was dispersed into the apartment. Tragically, young Kaia was born with a number of difficulties that continue to this day, including almost daily seizures; her family attributes these conditions to her *in utero* exposure to the carbon monoxide.[1]

Schenks sued Country Oaks in a Texas state court on behalf of Kaia, and Country Oaks tendered the defense of that case to Nautilus. Nautilus, in turn, refused to defend, contending that it owed no duty to defend or indemnify due to its policy's absolute pollution exclusion. That exclusion says that coverage does not apply to:

> f. Pollution
>
> > (1) "Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of "pollutants" at any time.

The policy defines the term "pollutant" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed."

The exclusion quoted above was added to the policy by way of an amendatory endorsement. The original text of the policy contained a pollution exclusion clause that was amended by the above-quoted endorsement. The pollution exclusion clause in the original text of the policy included the following language: "However, this subparagraph [the original exclusion] does not apply

---

[1] Because this case was brought as a declaratory judgment to determine a duty to defend and indemnify, we take the allegations of the underlying complaint as true. We express no opinion on the ultimate outcome of the underlying liability case.

to: (i) bodily injury if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building; . . . ."

Nautilus then filed the instant declaratory judgment action to determine its duties. Nautilus moved for summary judgment on the duty to defend and indemnify. Country Oaks cross-moved on its counterclaim seeking a defense and associated fees and costs. The district court granted summary judgment in full to Nautilus, and denied summary judgment to Country Oaks which timely appealed. Though not a party to the declaratory judgment action, Kaia's family filed an amicus brief before the district court, as well as this court, and participated in oral argument in this court.

## II. Standard of Review

This court reviews the district court's grant of summary judgment de novo, applying the same standards as the district court. *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 163 (5th Cir. 2006). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

## III. Discussion

*A. Rules of Insurance Contract Construction*

Under Texas law, which applies to this diversity case,

> [t]he eight-corners rule provides that when an insured is sued by a third party, the liability insurer is to determine its duty to defend solely from terms of the policy and the pleadings of the third-party claimant. Resort to evidence outside the four corners of these two documents is generally prohibited.

*GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 307 (Tex. 2006). The duty to defend does not depend upon the truth or falsity of the allegations: "A plaintiff's factual allegations that potentially support a covered claim is all that is needed to invoke the insurer's duty to defend[.]" *Id.* at 310

(citing *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965)).

In this case, Nautilus is not arguing about whether the incident in question was an "occurrence" under the policy. It rests its denial solely upon the single exclusionary endorsement. "[W]hen the plaintiff's petition makes allegations which, if proved, would place the plaintiff's claim within an exclusion from coverage, there is no duty to defend[.]" *Gulf States Ins. Co. v. Alamo Carriage Serv.*, 22 F.3d 88, 90 (5th Cir. 1994). Texas law places the burden of proving that an exclusion applies on the insurance company. TEX. INS. CODE ANN. § 554.002 (Vernon 2005). "Exclusions are narrowly construed, and all reasonable inferences must be drawn in the insured's favor." *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 370 (5th Cir. 2008) (citing *Gen. Star Indem. Co. v. Gulf Coast Marine Assocs.*, 252 S.W.3d 450, 458-59 (Tex. App.–Houston [14th Dist.] 2008, pet. denied)).

However, Texas courts construe insurance contracts under the same rules applicable to contracts generally. *Nat'l Union Fire Ins. Co. v. CBI Indus., Ins.*, 907 S.W.2d 517, 520 (Tex. 1995). This court's "primary goal, therefore, is to give effect to the written expression of the parties' intent." *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998). "[T]he parties' intent is governed by what they said, not by what they *intended* to say but did not." *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006) (emphasis in original). If a written contract is amenable to a definite legal meaning, then it is unambiguous and will be enforced as written. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

An insurance policy is only ambiguous if its plain language is amenable to more than one reasonable interpretation. *Certain Underwriters at Lloyd's London v. C.A. Turner Constr. Co.*, 112 F.3d 184, 186 (5th Cir. 1997). An ambiguity in a contract can be either patent or latent. *CBI Indus.*, 907 S.W.2d

at 520. A patent ambiguity is evident from the face of the contract. *Id.* "A latent ambiguity arises when a contract which is unambiguous on its face is applied to the subject matter with which it deals and an ambiguity appears by reason of some collateral matter." *Id.* If an insurance contract is ambiguous, courts must adopt the construction favored by the insured. *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 23 (Tex. 2008). Where the language of a contract is clear, a court's inquiry should begin and end with the policy's language. *See Constitution State Ins. Co. v. Iso-Tex. Inc.*, 61 F.3d 405, 410 n.4 (5th Cir. 1995) (noting that "Texas law does not recognize coverage because of 'reasonable expectation' of the insured.").

Thus, this case presents purely legal questions: is carbon monoxide a "pollutant" within the meaning of the policy and, if so, did it "discharge," "disperse," "release," or "seep" into the apartment in question? We address each question in turn.

## B. Is Carbon Monoxide a "Pollutant"?

Country Oaks contends that carbon monoxide, even at toxic levels, is not a "pollutant" within the meaning of the pollution exclusion. Under the pollution exclusion, "pollution" means "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acid, alkalis, chemicals, or waste."

Country Oaks admits that carbon monoxide is a gas. It contends, however, that carbon monoxide is not an "irritant or contaminant," because it does not generally or probably irritate or contaminate. Rather, Country Oaks notes that carbon monoxide is a naturally occurring substance in the environment that individuals encounter at various concentrations on a daily basis.

This circuit has explicitly rejected the argument that a substance must generally or usually act as an irritant or contaminant to constitute a "pollutant" under the pollution exclusion. In *Am. States Ins. Co. v. Nethery*, 79 F.3d 473 (5th

Cir. 1996), our court reviewed a district court's conclusion that paint and glue fumes do not constitute irritants because they do not normally inflict injury. *Id.* at 476 (addressing an almost identically worded pollution exclusion). We rejected this argument, concluding that the plain meaning of "irritant" is a "substance that produces a *particular* effect, not one that generally or probably causes such effects." *Id.* (emphasis in original); *see also United Nat'l Ins. Co. v. Hydro Tank, Inc.*, 525 F.3d 400, 401-02 (5th Cir. 2008) (noting that allegations of injury caused by "toxic levels" of unknown "chemicals or vapors" alleges injuries from a "pollutant" as defined by the pollution exclusion); *Am. Equity Ins. Co. v. Castlemane Farms, Inc.*, 220 F. Supp. 2d 809, 814 (S.D. Tex. 2002) (concluding that "salt-water is a 'contaminant' when it is introduced, accidentally, onto property that is not meant to receive it.").[2]

It is true, as Country Oaks notes, that *Nethery* applied Mississippi, as opposed to Texas, law. 79 F.3d at 475. But as the district court in this case astutely observed, *Nethery*'s definition of "irritant" did not turn on any canon of construction unique to Mississippi law.[3] Rather, in *Nethery* this court reasoned that it was bound by the ordinary meaning of "irritant," which dictionaries define simply as "an agent by which irritation is produced (a chemical)." *Id.* (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY UNABRIDGED 1197 (1981)).

Here, Schencks's petition alleges that she encountered a strong enough concentration of carbon monoxide to cause severe and permanent injuries to

---

[2] Under the reasoning of *Castlemane*, the carbon monoxide in this case constituted an "irritant" because it was released at higher–than–normal levels in a place (a confined apartment) where such release was not meant to occur. *See Castlemane*, 220 F. Supp. 2d at 814.

[3] Under Mississippi law, like Texas law, courts interpret insurance policies according to contract law. *Nethery*, 79 F.3d at 475. The terms of an unambiguous insurance policy must, therefore, be given their plain meaning. *Id.* "Only if the policy is ambiguous will it be interpreted in the light most favorable to the insured." *Id.*

Kaia *in utero*. These allegations clearly involve a "pollutant" as defined by the policy. This is particularly true when we examine the original version of the exclusion for "Pollution" (contained in the original policy) which excepted from the exclusion bodily injury sustained within a building "and caused by . . . fumes [or] vapor . . . from equipment used to heat the building." The exception covers Kaia's situation and would have negated application of the exclusion. The amendatory endorsement (bearing the title "TOTAL POLLUTION EXCLUSION ENDORSEMENT") removed this exception from the exclusion. It could not be clearer.

## C. *Did the Carbon Monoxide Disperse, Discharge, Seep, or Release?*

Country Oaks also contends that Schencks's pleadings do not allege that Kaia's injuries resulted from the "discharge, dispersal, seepage, migration, release, or escape" of carbon monoxide.

The relevant clause of the pollution exclusion states that there is no coverage for "'bodily injury' . . . which would not have occurred *in whole or in part* but for the . . . alleged . . . discharge [or] release . . . of 'pollutants.'" (emphasis added). "To 'discharge' a pollutant means to emit it." *Zaiontz v. Trinity Universal Ins. Co.*, 87 S.W.3d 565, 573 (Tex. App.–San Antonio 2002, pet. denied) (citing MERRIAM WEBSTER DICTIONARY 220 (1994)). "To 'release' a pollutant means to set it free from confinement." *Id*. (citing MERRIAM WEBSTER DICTIONARY 618 (1994)).

Examining the allegations of the underlying petition, Schencks alleges that unusually high levels of carbon monoxide accumulated in her apartment after her furnace vent became obstructed. The only way that carbon monoxide could accumulate in Schencks's apartment is if it was first emitted from her furnace. The normal emission of carbon monoxide from an apartment furnace falls within the plain meaning of the terms "discharge," "disperse," "seep," and "release."

Country Oaks contends, without citation to authority, that the discharge or release of a pollutant, as defined by the pollution exclusion, requires a "more robust event" than the normal emission of carbon monoxide from a home appliance. But the pollution exclusion does not say this; rather, the exclusion applies, without qualification, to any "discharge, dispersal, seepage, migration, release, or escape" of a "pollutant." Thus, as long as a "pollutant" is emitted through one of the enumerated mechanisms and causes bodily injury, the exclusion applies to bar coverage. If the parties intended to impose a "robust" requirement, they could have said so – and, indeed, the prior version of the policy would have excepted this event. As it stands, however, nothing in the policy permits distinguishing between "active" and "passive" pollutants.

Country Oaks also contends that the pollution exclusion does not apply to "contained pollutants." Again, there is no support for this limitation in the exclusion's plain language. In terms of movement, the pollution exclusion requires only that the "pollutant" be, among other things, "discharged," "dispersed," or "released." Here, the requisite movement clearly occurred because the carbon monoxide at issue accumulated only after being discharged from Schencks's furnace. The mere fact that the carbon monoxide accumulated in the contained space of an apartment, as opposed to the environment generally, does not change this analysis, as numerous courts applying Texas law have recognized. *See Turner Constr.*, 112 F.3d at 188 (noting that similar pollution exclusion not limited "to only those discharges causing environmental harm"); *Hamm v. Allstate Ins. Co.*, 286 F. Supp. 2d 790, 794-95, 794 n.2 (N.D. Tex. 2003) (holding that pollution exclusion negated insurer's duty to defend when injury resulted from indoor accumulation of toluene fumes during an office renovation); *Zaiontz*, 87 S.W.3d at 571-73 (noting that injury caused by "odor eliminator" chemical that was confined to its proper area of application triggered pollution exclusion). Indeed, this court recently held that

substances *need not be released into the surrounding environment* to qualify as pollutants for purposes of a pollution exclusion clause. Thus, a pollution exclusion clause applies whenever a pollutant causes harm by a physical mechanism enumerated in the policy, irrespective of where the injury took place or whether the pollutant was released into the environment.

*Noble Energy, Inc. v. Bituminous Cas. Co.*, 529 F.3d 642, 649 (5th Cir. 2008) (emphasis in original) (applying Texas law to the same pollution exclusion at issue in this case).

Country Oaks further contends that the pollution exclusion should only apply to injuries occurring in the workplace, as opposed to homes or apartments. But, again, this distinction, however reasonable, is simply not made by the language of the pollution exclusion; the fact that most injuries implicating the pollution exclusion have occurred at work sites cannot change what the exclusion explicitly says.

Finally, Country Oaks seems to argue that the injury-producing event in this case was not the "release" or "discharge" of carbon monoxide, but rather its improper confinement in Schencks's apartment due to the obstructed vent. We disagree that this distinction is relevant. The exclusion explicitly states that coverage does not apply to "'bodily injury' . . . which would not have occurred *in whole or in part* but for the . . . alleged . . . discharge [or] release . . . of 'pollutants.'" (emphasis added). Thus, by its terms, the exclusion applies to bar recovery for every "but for" cause of injury that satisfies the exclusion's other requirements. Here, neither the discharge of carbon monoxide alone nor its containment alone was sufficient to injure Kaia: without the blocked vent, the discharge would not have caused injury; without the discharge, the blocked vent would have been harmless. Because the two causes cannot be separated, they are both "but for" causes; thus the exclusion is triggered. *See Utica Nat'l Ins. Co. v. Am. Indem. Co.*, 141 S.W.3d 198, 204 (Tex. 2004) ("In cases involving

concurrent causation, the excluded and covered events combine to cause the plaintiff's injuries. Because the two causes cannot be separated, the exclusion is triggered.").

In sum, the emission of carbon monoxide from a furnace into an apartment unambiguously satisfies the pollution exclusion's requirement of a "discharge, dispersal, seepage, migration, release, or escape." It is irrelevant that a reasonable insured might not expect this result,[4] or that, given sufficient imagination, we can think of ways – not presented here – in which enforcement of this exclusion would lead to absurd results.[5] *See Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994) (on rehearing, vacating its prior opinion) ("[N]either conflicting expectations nor disputation is sufficient to *create* an ambiguity." (emphasis in original)).

## D.  Duty to Indemnify

The district court also granted summary judgment to Nautilus on the duty to indemnify. Generally speaking, the duty to indemnify is decided only after the underlying liability case is concluded. However, where an exclusion that precludes the duty to defend would also preclude indemnity, courts are permitted to decide the duty to indemnify in advance of the underlying liability lawsuit's end. *See Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 536 (5th Cir. 2004) (citing *Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997)) ("Texas law only considers the duty-to-indemnify

---

[4] As discussed above, Texas law does not look to the "reasonable expectations" of the insured. However, even if it did, given the amendatory endorsement's elimination of the exception, it would seem that the "reasonable" expectation of the insured should be that this event would not be covered.

[5] While the result here is sad, it is not absurd to call carbon monoxide a pollutant. Although carbon monoxide at low levels may not be deadly or immediately injurious, it is not a benign substance. People commit suicide by carbon monoxide poisoning, and it is without doubt that much of the efforts to improve air quality in major cities centers upon the deleterious effects of pollution caused by carbon monoxide in the air.

question justiciable after the underlying suit is concluded, unless '*the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify.*'" (emphasis in original)).  That situation is presented here, and we find no error in the district court's grant of summary judgment to Nautilus on the entire case.

## IV. Conclusion

Accordingly, the district court's judgment is AFFIRMED.