**AMERICAN EQUITY INSURANCE COMPANY, Plaintiff,**

v.

**CASTLEMANE FARMS, INC., et al., Defendants.**

**No. Civ.A. H–01–1681.**

United States District Court, S.D. Texas, Houston Division.

Sept. 6, 2002.

John Charles Tollefson, Goins Underkofter, Dallas, TX, for Plaintiff.

Robert P. Todd, Attorney at Law, Houston, TX, for Castlelman Farms Inc.

Dale L. Trimble, The Trimble Firm, The Woodlands, TX, for K-Bar Services Inc.

**MEMORANDUM ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

MILLOY, United States Magistrate Judge.

On August 31, 2001, the parties to this action consented to proceed before a United States magistrate judge for all purposes, including entry of a final judgment, under 28 U.S.C. § 636(c). (Docket Entry

# 7). Before the court is a motion for summary judgment, under Rule 56 of the Federal Rules of Civil Procedure, which was filed by Plaintiff American Equity Insurance Company ("Plaintiff," "American Equity"). (American Equity Insurance Company's Motion for Summary Judgment and Brief in Support ["Plaintiff's Motion"], Docket Entry # 14). In its motion, Plaintiff seeks a declaration that it has no duty to defend or indemnify its insured in an underlying state court action. (Plaintiff's Motion at 1–2). The insured, Defendant K–Bar Services, Inc. ("Defendant," "K–Bar") has responded to this motion. (K–Bar Services, Inc.'s Response to American Equity Insurance Company's Motion for Summary Judgment ["K–Bar's Response"], Docket Entry # 15). After considering the motion, the evidence provided, and the applicable law, it is ORDERED that Plaintiff's motion for summary judgment is GRANTED.

## Background

Plaintiff is an insurance provider that is incorporated under the laws of Delaware and has its principle place of business in Arizona, although it conducts business in Texas as well. (Plaintiff's Original Complaint for Declaratory Judgment ["Complaint"]) ¶ 1. K–Bar is a Texas landscape and gardening company. (*Id.* ¶¶ 1, 5). On January 1, 2000, American Equity issued K–Bar a one-year "Commercial Lines Insurance Policy" (the "Policy"). (*Id.* ¶ 4; K–Bar's Response, Ex. 1: Commercial Lines Policy No. ACC 102 021 ["Policy"]). In that Policy, American Equity agreed, among other things, to provide a defense if K–Bar was sued for " 'bodily injury' or 'property damage,' " and to "pay those sums that the insured becomes legally obli-

gated to pay" as the result of any such suit. (Policy, Commercial General Liability Coverage Form ["CGL Policy"] ¶ I.A.1.a). Sometime in 2001, Castlemane Farms, Inc. ["Castlemane"], a Texas corporation and a Defendant here, filed a lawsuit against K–Bar in a Texas state court, alleging that K–Bar caused damage to real property that it owns in Conroe, Texas.[1] (Plaintiff's Motion, Ex. 1 & Defendant's Motion, Ex. 2: Plaintiff's Original Petition, *Castlemane Farms, Inc. v. ExxonMobil Production Co.*, Cause No. 01–02–01286–CV (410th Judicial Dist., Montgomery County, Tex.) ["Castlemane Petition"], ¶¶ V, VII, VIII). Castlemane claims, specifically, that K–Bar had been hired by the Texas Department of Transportation to landscape the right-of-way to a highway that is adjacent to its property. (*Id.* ¶ V). On June 18, 2000, while K–Bar's employees were mowing the grass on that right-of-way, they allegedly damaged a salt-water disposal pipeline owned by ExxonMobil Production Company ("ExxonMobil"). (*Id.*). Castlemane claims that "the contents of the disposal pipeline" discharged onto its land, causing the market value of the property to depreciate. (*Id.* ¶¶ VII, VIII). Because of that purported damage, Castlemane filed suit against K–Bar and ExxonMobil, alleging that those entities are liable to it for trespass, nuisance, and negligence, under Texas law.[2] (*Id.* ¶¶ VI, VII, IX). Apparently, the Castlemane suit is still pending in state court. (*See* K–Bar's Response at 1).

After K–Bar was served with Castlemane's petition, it demanded that American Equity defend it in that lawsuit and indemnify it against any award that might result. (Complaint ¶ 3). The insurance

---

1. The record is silent on the exact date that the Castlemane suit was filed.

2. Castlemane claims that both K–Bar and ExxonMobil are liable for trespass and nui-

sance. (Castlemane Petition ¶¶ VI–VIII). The negligence claim is alleged against ExxonMobil only. (*Id.* ¶ IX).

company refused to do so, claiming that coverage was barred by the Policy's "Total Pollution Exclusion." (*Id.* ¶¶ 3, 7; Plaintiff's Motion ¶ 4). American Equity then filed this lawsuit, and asks the court to declare that "it has no duty to defend or indemnify K–Bar against any of the claims of Castlemane." (Complaint at 4). In addition, Plaintiff is seeking "all costs of these proceedings, including reasonable attorney's fees." (*Id.*).

In its pending motion, American Equity insists that, because the Castlemane petition alleges damages "arising out of contamination by spills," the "total pollution exclusion unambiguously precludes any duty to defend or indemnify" K–Bar, and it asks the court to enter a judgment in its favor. (Plaintiff's Motion ¶ 5). K–Bar argues in response that the Castlemane petition does not characterize the "alleged salt water discharge" as a "pollutant," and so the cited exclusion does not apply. (K–Bar's Response ¶ I). For the reasons stated below, it is ORDERED that Plaintiff's motion is GRANTED.

## Standard of Review

### A. Declaratory Judgment

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (1994). However, "[a] court need not provide declaratory judgment relief on request." *Odeco Oil & Gas Co., Drilling Div. v. Bonnette*, 4 F.3d 401, 404 (5th Cir.1993). The United States Supreme Court has characterized the Declaratory Judgment Act, repeatedly, as an "enabling" one, "which confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995) (quoting *Pub. Serv.*

*Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241, 73 S.Ct. 236, 97 L.Ed. 291 (1952)). The Court has explained, as well that "the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power." *Id.* (quoting *Wycoff*, 344 U.S. at 241, 73 S.Ct. 236). Disputes relating to insurance coverage are often resolved in an action for declaratory judgment. *Harris v. United States Fidélity & Guaranty Co.*, 569 F.2d 850, 852 (5th Cir.1978). It is well established, however, that § 2201 is merely procedural, and it extends only to those controversies within the jurisdiction of the federal courts. *Gaar v. Quirk*, 86 F.3d 451, 453–54 (5th Cir.1996); *Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173, 1176–77 (5th Cir.1984). For that reason, federal courts may not entertain declaratory judgment actions unless there is an independent basis for subject matter jurisdiction. *Lowe*, 723 F.2d at 1177. As the present action is based on diversity of citizenship, under 28 U.S.C. § 1332, it does satisfy that jurisdictional requirement, and Plaintiff's motion for a declaratory judgment is properly before this court.

### B. Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). Under Rule 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir.1994). The party moving for summary judgment must demonstrate the absence of a genu-

ine issue of material fact, but need not negate the elements of the non-movant's case. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994). If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the non-movant's response. *Id.* When the moving party has met its Rule 56 burden, the non-movant cannot survive a motion for summary judgment by resting merely on the allegations in it pleadings. *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.,* 66 F.3d 89, 92 (5th Cir.1995). If the movant does meet his burden, the non-movant must go beyond the pleadings and designate specific facts to show that there is a genuine issue for trial. *Little,* 37 F.3d at 1075. Further, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Webb v. Cardiothoracic Surgery Assocs.,* 139 F.3d 532, 536 (5th Cir.1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

To meet its burden, the nonmoving party must present "significant probative" evidence indicating that there are issues of fact remaining for trial. *Conkling v. Turner,* 18 F.3d 1285, 1295 (5th Cir.1994). If the evidence presented to rebut the summary judgment motion is only colorable or not significantly probative, summary judgment should be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–250, 106 S.Ct. 2505, 91 L.Ed.2d 202. (1986). But, in deciding a summary judgment motion, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 248, 106 S.Ct. 2505. However, "Rule 56 mandates the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear

the burden of proof at trial." *Little,* 37 F.3d at 1075.

## Discussion

 No party to this suit contends that any laws other than those of Texas control this case. (*See* Plaintiff's Motion ¶¶ 1, 5). Under Texas law, it is well settled that an insurer owes a duty to defend its insured against allegations that are covered by the policy. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex.1997). Texas law is also well-settled that the duty to defend is a broader one than the duty to indemnify. *St. Paul Fire & Marine Ins. Co. v. Green Tree Financial Corp.—Tex.,* 249 F.3d 389, 391 (5th Cir.2001); *Gulf Chem. & Metallurgical Corp. v. Assoc. Metals & Minerals Corp.,* 1 F.3d 365, 369 (5th Cir.1993); *St. Paul Ins. Co. v. Texas Dept. of Transp.,* 999 S.W.2d 881, 884 (Tex.App.—Austin 1999, no pet.); *Colony Ins. Co. v. H.R.K., Inc.,* 728 S.W.2d 848 (Tex.App.—Dallas 1987, no writ). In addition, "an insurer is obligated to defend an insured as long as the complaint alleges at least one cause of action within the policy's coverage." *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* 99 F.3d 695, 701 (5th Cir.1996); *and see Rhodes v. Chicago Ins. Co.,* 719 F.2d 116, 119 (5th Cir.1983) (citing *Superior Ins. Co. v. Jenkins,* 358 S.W.2d 243, 244 (Tex.Civ.App.—Eastland 1962, writ ref'd n.r.e.); *Maryland Cas. Co. v. Moritz,* 138 S.W.2d 1095, 1097–98 (Tex.Civ.App.—Austin 1940, writ ref'd)); *American Eagle Ins. Co. v. Nettleton,* 932 S.W.2d 169, 173 (Tex. App.—El Paso 1996, writ denied). Indeed, the obligation to defend arises if there is even "potentially, a case under the complaint within the coverage of the policy." *Rhodes,* 719 F.2d at 119; *Merchants,* 939 S.W.2d at 141; *Heyden Newport Chem. Corp. v. Southern Gen'l Ins. Co.,* 387 S.W.2d 22, 26 (Tex.1965) (quoting 50

A.L.R.2d 458, 504). But, to determine if a duty to defend exists, a district court must limit its review to the "four corners" of the insurance policy and the "four corners" of the allegations in the underlying complaint. *Merchants,* 939 S.W.2d at 140; *Providence Wash. Ins. Co. v. A & A Coating, Inc.,* 30 S.W.3d 554, 555 (Tex.App.—Texarkana 2000, pet. denied); *Tri–Coastal Contractors, Inc. v. Hartford Underwriters Ins. Co.,* 981 S.W.2d 861 (Tex.App.—Houston [1st Dist.] 1999, pet. denied). This requirement, known as the "eight corners" or "complaint allegation" rule, governs this dispute. *See Merchants,* 939 S.W.2d at 141; *Green Tree Financial,* 249 F.3d at 391; *Canutillo,* 99 F.3d at 701.

Under the eight-corners rule, a consideration of the insurer's duties to its insured, if any, begins with an examination of the insurance policy at issue. *See, e.g., Canutillo,* 99 F.3d at 700. It is the insured's burden to show "that the claim against it is potentially within the policy's coverage." *Id.* at 701; *and see Employers Cas. Co. v. Block,* 744 S.W.2d 940, 944 (Tex.1988), *overruled on other grounds by State Farm Fire and Cas. v. Gandy,* 925 S.W.2d 696 (Tex.1996). On the other hand, "the insurer bears the burden of establishing that an exclusion in the policy constitutes an avoidance of or affirmative defense to coverage." *Canutillo,* 99 F.3d at 701 (citing Tex.Ins.Code art. 21.58(b)). In this instance, there does not appear to be a dispute on whether the Policy's "property damage" endorsement covers the harms alleged in the Castlemane suit. Instead, American Equity argues that any obligation it might otherwise have to defend K–Bar from Castlemane's claims is avoided by one of the Policy provisions. The provision Plaintiff relies on, the "total pollution exclusion," details that the Policy

> does not apply to: … "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

(CGL Policy ¶ I.2.f(1), as amended by Additional Exclusions Form). Further, the Policy defines "pollutants" as,

> any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

(*Id.* ¶ V.15). Here, American Equity points to Castlemane's allegation that K–Bar allegedly caused a "salt-water disposal pipeline" to "discharge," injuring its property. (Plaintiff's Motion ¶ 3) (quoting Castlemane Petition ¶ V). Plaintiff maintains that this allegation is one for "property damage" caused by "pollutants," and is, therefore, excluded by the cited clause. (*Id.* ¶ 4). In response, K–Bar argues that a "material issue … exists whether salt water … qualifies as a 'pollutant,' " under the Policy terms, because "American Equity" has presented no evidence that salt water is an 'irritant' or "contaminant." (K–Bar's Response ¶ II). K–Bar insists further that "[t]he phrase 'irritant or contaminant' is susceptible to more than one meaning." (*Id.*). For that reason, it claims that "an ambiguity arises as to interpretation of the policy term," and that the Policy must be interpreted in its favor. (*Id.*).

■■ It is true, as K–Bar argues, that, under Texas law, if the language of an insurance policy is ambiguous, then a court must "resolve the uncertainty by adopting the construction that most favors the insured." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.,* 811 S.W.2d 552, 555 (Tex.1991) (citing *Barnett v. Aetna Life Ins. Co.,* 723 S.W.2d 663, 667 (Tex.1987); *Ramsay v. Maryland Am. Gen. Ins. Co.,* 533 S.W.2d 344, 349 (Tex. 1976); *Brown v. Palatine,* 89 Tex. 590, 35

S.W. 1060, 1061 (1896)). But a policy is not ambiguous if its terms can be given only one reasonable construction. *Hudson Energy Co.*, 811 S.W.2d at 555; *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex.1984). As the Texas Supreme Court has recognized several times:

> Not every difference in the interpretation of ... an insurance policy amounts to an ambiguity. Both the insured and the insurer are likely to take conflicting views of coverage, but neither conflicting expectations nor disputation is sufficient to *create* an ambiguity.

*State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex.1995); *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994). The state's highest court has held that, in "construing a contract, the court's primary concern is to give effect to the written expression of the parties' intent." *Forbau*, 876 S.W.2d at 133; *see also Balandran v. Safeco Ins. Co. of America*, 972 S.W.2d 738, 741 (Tex.1998); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). This intent is determined, first, by examining "the language of the contract itself." *Empire Fire and Marine Ins. Co. v. Brantley Trucking, Inc.*, 220 F.3d 679, 681 (5th Cir.2000) (citing *Puckett*, 678 S.W.2d at 938). To give effect to the parties' intent, the court must afford the words of an insurance contract "their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense." *See Heritage Resources, Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex.1996). Moreover, the law is settled that, "[i]f a petition alleges facts that, *prima facie*, exclude the insured from coverage, [then] the insurer has no duty to defend." *Taylor v. Travelers Ins. Co.*, 40 F.3d 79, 81 (5th Cir.1994) (quoting *Adamo v. State Farm Lloyds Co.*, 853 S.W.2d 673, 677 (Tex.App.—Houston [14th Dist.] 1993, writ denied)); *and see Fidelity & Guar.*

*Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 788 (Tex.1982). It follows that, if the language of the disputed exclusion can be given only one reasonable meaning, then it is not ambiguous, and it must be interpreted as written. *See Brantley Trucking*, 220 F.3d at 681; *Balandran*, 972 S.W.2d at 741; *Heritage Resources*, 939 S.W.2d at 121; *CBI Indus.*, 907 S.W.2d at 520; *Forbau*, 876 S.W.2d at 133; *Hudson Energy Co.*, 811 S.W.2d at 555; *Puckett*, 678 S.W.2d at 938. Further, if that exclusion is implicated on the face of the Castlemane petition, then American Equity has no duty to defend K–Bar against the claims. *See Taylor*, 40 F.3d at 81; *McManus*, 633 S.W.2d at 788; *Adamo v. State Farm Lloyds Co.*, 853 S.W.2d 673, 677.

█ Here, although K–Bar argues that the phrase "irritant or contaminant" is ambiguous, it does not present any alternative meanings for those terms. The Policy clearly defines "irritant or contaminant" to include "any liquid ... chemicals [or] waste." (CGL Policy ¶ V.15). Because this definition was included in the Policy itself, it must be considered the "written expression of the parties' intent." *See Heritage Resources*, 939 S.W.2d at 121; *Forbau*, 876 S.W.2d at 133. There can be no dispute that the contents of a "salt-water disposal pipeline" is within the category of "liquid waste." *See, e.g., Mid–Continent Casualty Co., v. Safe Tire Disposal Corp.*, 16 S.W.3d 418, 423 (Tex. App.—Waco 2000, pet. denied) (defining waste, in part, as "an unwanted by-product"). Further, it is reasonable to conclude that salt-water is a "contaminant" when it is introduced, accidentally, onto property that is not meant to receive it. Here, K–Bar has made no showing that the salt-water discharge that Castlemane complains of is not a "pollutant" under the "plain, ordinary, and generally accepted meaning of the [Policy] terms." *See Heritage Resources*, 939 S.W.2d at 121. Even

construing the Policy in the manner most favorable to K–Bar, as it must, the court finds no reasonable alternative interpretation, on these facts, that precludes the total pollution exclusion in the Policy. Because no genuine issue of material fact has been raised, it is ORDERED that Plaintiff's motion for summary judgment is GRANTED.

Although the court recognizes that Plaintiff has requested an award of attorney's fees, it has not shown that it is entitled to such an award under any statute or contract. That request is DENIED. Plaintiff's request for costs of court, however, is GRANTED.

Further, the court notes that there has been no showing, or even an allegation, that Plaintiff owes any liability to Castlemane, even if it did have a duty to defend K–Bar. As it does not appear that Plaintiff has stated any claims against Castlemane, that party is DISMISSED from this action.

## Conclusion

Based on the foregoing, it is ORDERED that the motion for summary judgment by Plaintiff American Equity Insurance Company is GRANTED.

It is further ORDERED that Plaintiff has no duty to defend or indemnify K–Bar Services, Inc. against the claims in the underlying state court action, *Castlemane Farms, Inc. v. ExxonMobil Production Co.*, Cause No. 01–02–01286–CV (410th Dist., Montgomery County, Tex.).

The Clerk of the Court shall send copies of the memorandum and order to the respective parties.

The Clerk shall enter this Order and provide a true copy to all counsel of record.