# Illinois Official Reports

## Appellate Court

---

*In re Liquidation of Legion Indemnity Co.*, 2015 IL App (1st) 140452

---

Appellate Court Caption

*In re* LIQUIDATION OF LEGION INDEMNITY COMPANY, Regarding Claim No. 6348175-006 (Pedro M. Cabrera, Porfirio Castillo, Hermelinda Castro, Florentina Cavazos, Michelle Collins, Diana Duenes, Jonas Escalante, Esmeralda Cabrera Garcia, Celina Sauceda Garza, Jose Gonzalez, Carmen Martinez, Monica Marquez, Marta Mora, Rosario Moreno, Daisy Perez, Manuel Rodriguez, Dalila Rivas, Alicia Ruiz, Ninfa Sauceda, Maria Elva Solis, Arturo Valdez, Maria Ybarra, and Minnie Zamora, Claimants-Appellants).

District & No.

First District, Second Division
Docket No. 1-14-0452

Filed

November 10, 2015

Decision Under Review

Appeal from the Circuit Court of Cook County, No. 02-CH-06695; the Hon. Mary Mikva, Judge, presiding.

Judgment

Reversed and remanded.

Counsel on Appeal

Stephen W. Schwab and Carl H. Poedtke III, both of DLA Piper LLP, of Chicago (Michael J. Gallagher, of counsel), and Mark Ticer, of Dallas, Texas, for claimants-appellants.

Joel A. Haber, Todd A. Rowden, Matthew S. Darrough, and Caroline Ackerman, all of Thompson Coburn LLP, of Chicago, for respondent-liquidator-appellee.

Panel                  JUSTICE SIMON delivered the judgment of the court, with opinion.
                       Justices Neville and Hyman concurred in the judgment and opinion.


## OPINION

¶ 1     This matter is before this court upon the circuit court's grant of the petition by petitioner Director of Insurance of the State of Illinois as Liquidator (Liquidator) of Legion Indemnity Company (Legion) for disallowance of a contested claim by claimants-appellants (Claimants). Claimants are 23 individual governmental employees who obtained a judgment against D. Reyna Construction, Inc. (Reyna), in their negligence action related to bodily injury from exposure to toxic mold in buildings constructed by Reyna in Hidalgo County, Texas. Claimants sought to collect their judgment from Legion as Reyna's insurer under a commercial general liability policy issued by Legion on July 12, 1999 (Policy). However, as Legion had been placed in liquidation on April 9, 2003, before judgment was entered, Claimants filed a claim in receivership with the Liquidator. The Liquidator recommended disallowance of the Claimants' claim based on exclusionary language in the Policy and the circuit court granted its petition to disallow the contested claim.

¶ 2     On appeal, Claimants argue that the circuit court erred in holding that Texas law required denial under the Policy's "Pollution and Health Hazard" exclusion even though it does not mention mold. Claimants also assert that the circuit court erred in ruling that the Liquidator may enforce conditions or exclusions of the Policy under Texas surplus lines law. For the following reasons, we reverse the judgment of the circuit court.


## I. BACKGROUND

¶ 4     On March 30, 1999, Reyna entered into a contract with Hidalgo County, Texas, to construct various government buildings in Weslaco, Texas. Pursuant to the construction contract, Reyna procured the Policy with Legion for a one-year term from July 12, 1999, to July 12, 2000, but canceled the Policy effective April 20, 2000. On July 28, 1999, Legion issued the Policy through the surplus lines broker Burns & Wilcox Ltd. Reyna began the construction on April 14, 1999. The construction was scheduled to be completed by October 1999. Reyna failed to meet the deadline. Although the construction continued through spring 2000, Hidalgo County took possession of completed portions of the campus on or around January 1, 2000, and officially opened the campus to the public on May 26, 2000. In March 2000, a county health officer reported that there was excessive moisture and a "distinct smell of mold."

¶ 5     In May and June 2001, several county employees began to complain about mold in the campus buildings. In August 2001, the Texas Department of Health discovered high humidity levels and mold growth. Hidalgo County filed suit against the architects and Reyna and the Claimants intervened, alleging that they sustained bodily injuries that required medical treatment due to exposure to the toxic mold levels resulting from faulty construction. On June 29, 2009, the trial court found Reyna negligent in its construction and entered a judgment of $37,756,953.03 in favor of Claimants against Reyna.

¶ 6 An order of liquidation was entered on April 9, 2003, appointing the Liquidator to take such action as the nature of the cause and the interests of Legion, its policyholders, creditors, and the public may require pursuant to the provisions of article XIII of the Illinois Insurance Code (215 ILCS 5/art. XIII (West 2002)). Reyna assigned its rights to any recovery under the Policy to Claimants, and Claimants filed a timely proof of claim with the Liquidator. Liquidator recommended that Claimants' proof of claim be denied and, following written objections by claimants, the Liquidator filed the underlying petition to disallow the contested claim. Liquidator reasoned that Claimants did not occupy the buildings in question until after the Policy was canceled and failed to demonstrate injury during the effective time of the Policy. Furthermore, Liquidator contended that the "Pollution and Health Hazard" exclusion of the Policy covered mold and barred Claimants' claim.

¶ 7 The Policy provides for exclusions resulting from asbestos and lead contamination, as well as a general pollution and health hazard exclusion, which provides, in relevant part:

"J. POLLUTION AND HEALTH HAZARD EXCLUSION

This Insurance does not apply either for defense or for indemnification, to any claim, suit or demand alleging bodily injury, property damage, personal injury or other loss, costs or damages (including any costs incurred in cleaning up, remedying or detoxifying any contamination) arising wholly or in part, directly or indirectly, from either (1) the contamination of the environment by any pollutant that is introduced at anytime, anywhere, or in any way; or (2) on account of a single, continuous, or intermittent or repeated exposure to, ingestion of inhalation of or absorption of any Health Hazard.

As used in this endorsement the following terms shall have the following meanings:

'Contamination' means any unclean or unsafe or damaging or injurious or unhealthful condition arising out of the presence of any pollutant, whether permanent to transient, in any environment.

* * *

'Environment' means any natural or manmade object or feature, person, animal, crop, vegetation, area of land, body of water, underground water or water table supplies, air or air supply (whether inside or outside of any structure) and any other feature of the earth or its atmosphere, whether or not altered, developed or cultivated, whether or not any such environment was owned, controlled or occupied by any insured.

'Health Hazard' means any chemical, alkali, radioactive material, or any other irritant or any pollutant or other substance, product, or waste product, or the fumes or other discharges or effects therefrom, whether liquid, gas or solid, alleged or determined to be toxic or harmful to the health of any person, plant or animal.

'Pollutant' means any smoke, vapors, soot, Electromagnetic Field Radiation, fumes, acids, alkalis, chemicals, liquids, solids, gases, radiation, thermal pollutants, noise or sound of any kind or any other irritant or contaminant."

¶ 8 Following the parties' oral argument, on June 17, 2013, the circuit court disallowed the Claimants' claim. The court held that mold comes within the definition of "Health Hazard" and "Pollutant" and that the "Pollution and Health" exclusion (Exclusion) applied to and excluded

the Claimants' claim. Subsequently, Claimants filed a motion for reconsideration where they argued that: (1) the Policy was incomplete and internally inconsistent; (2) other policies that Legion had filed with the Illinois Department of Insurance expressly provided or excluded coverage for mold; and (3) Liquidator was not entitled to rely on the Policy's exclusions because it could not establish that the Policy had been properly procured and authorized in compliance with the Texas surplus lines law requirements. The court denied the Claimants' motion for reconsideration holding that there was no ambiguity in the Exclusion that would provide coverage and reaffirming the disallowance of Claimants' claim. In addition, in denying the Claimants' motion for reconsideration, the court held that Claimants did not show either unauthorized insurance or an outcome determinative violation of the Texas surplus lines law.

¶ 9                                     II. ANALYSIS

¶ 10        Initially, this court notes that Texas law applies to the interpretation of the Policy. See *Yessenow v. Executive Risk Indemnity, Inc.*, 2011 IL App (1st) 102920, ¶ 14 (holding that, in the absence of an effective choice-of-law agreement, the choice-of-law rules of the forum state control). We interpret insurance policies from Texas according to the rules of contract construction. *State Farm Lloyds v. Page*, 315 S.W.3d 525, 527 (Tex. 2010); *Texas Farmers Insurance Co. v. Murphy*, 996 S.W.2d 873, 879 (Tex. 1999); *Kelley-Coppedge, Inc. v. Highlands Insurance Co.*, 980 S.W.2d 462, 464 (Tex. 1998). If the policy's language is worded so that it can be given a definite or certain legal meaning, it is not ambiguous and we construe it as a matter of law. See *id.* (quoting *National Union Fire Insurance Co. of Pittsburg, Pennsylvania v. CBI Industries, Inc.*, 907 S.W.2d 517, 520 (Tex. 1995)). Whether a contract is ambiguous is itself a question of law. *Id.* An ambiguity does not arise simply because the parties offer conflicting interpretations. *Id.* at 465; see also *Grain Dealers Mutual Insurance Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997). An ambiguity exists only if the contract language is susceptible to two or more reasonable interpretations. *Kelley-Coppedge*, 980 S.W.2d at 465. When construing the policy's language, we must give effect to all contractual provisions so that none will be rendered meaningless. *Id.* at 464. If after applying these rules, a contract is subject to two or more reasonable interpretations, it is ambiguous. See *National Union Fire Insurance Co.*, 907 S.W.2d at 520.

¶ 11        Where an ambiguity involves an exclusionary provision of an insurance policy, we "must adopt the construction *** urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *National Union Fire Insurance Co. of Pittsburgh, Pa. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991); see also *Glover v. National Insurance Underwriters*, 545 S.W.2d 755, 761 (Tex. 1977). This case involves the interpretation of an insurance policy contract, which presents an issue of law that we review *de novo*. *Gaudina v. State Farm Mutual Automobile Insurance Co.*, 2014 IL App (1st) 131264, ¶ 17.

¶ 12        Claimants argue that the circuit court erred when it held that the Exclusion applied to their mold claims because the Liquidator failed to satisfy his statutory and legal burden of establishing the applicability of the Exclusion. Specifically, Claimants argue that the Exclusion does not list the words "mold," "fungi," or any similar mold-like terms and it does not unambiguously exclude mold-related claims from coverage. Claimants contend that the

circuit court erroneously held that the words "irritant" and "pollution" referenced in the Exclusion and accompanying the definitions of "Health Hazard" and "Pollutant" necessarily included mold-related claims. According to Claimants, the court relied on general terms to the exclusion of the specific terms used in the exclusion, contrary to Texas law that requires courts to consider all the Policy terms and to interpret the exclusions narrowly.

¶ 13    In addition, Claimants argue that the words "mold" and "fungi" could have been easily inserted in the Policy but were not. Claimants assert that they have submitted newly discovered evidence from the receivership record that the Liquidator had paid at least one other mold-related construction claim. Claimants also indicate that other insurance policies that Legion had publicly filed and issued contemporaneously with the Policy specifically mentioned and excluded mold and the Policy in the instant case does not. Claimants contend that the circuit court erred when it disregarded this evidence because this evidence demonstrates that Legion knew how to exclude mold or fungi from coverage but failed to include these words in the Policy at the time it was issued.

¶ 14    In turn, Liquidator argues that the circuit court correctly disallowed the Claimants' claim both in the court's opinion and in its ruling in response to Claimants' motion to reconsider. Liquidator contends that the circuit court properly determined that the language in the Exclusion unambiguously encompassed injuries caused by mold, and, therefore, the Exclusion applied precluding coverage for Claimants' claim. According to Liquidator, mold falls within the definition of "pollutant" because it is an "irritant and contaminant." Liquidator contends that, since mold is a toxic substance it also fits in the definition of a "Health Hazard," and therefore, the Exclusion applies precluding the Claimants' claims. Additionally, Liquidator argues that Claimants' pleadings and arguments in the underlying negligence lawsuit against Reyna placed mold into the Policy's definition of "Health Hazard."

¶ 15    We disagree with the circuit court's determination and the Liquidator's interpretation that the Exclusion applies in this case disallowing Claimants' claim for their mold related injuries. In deciding that mold comes within the definitions of the Exclusion, the trial court misapplied the well settled rules of contract construction that require a court to look at the plain language of the contract to give effect to the parties' intent and to interpret the exclusions narrowly and in favor of the insured. See *Kelley-Coppedge*, 980 S.W.2d at 464. Here, the plain language of the Policy does not specifically exclude mold related claims. In *De Laurentis v. United Services Automobile Ass'n*, 162 S.W.3d 714, 723-24 (Tex. 2005), an insurer argued that, under a name-perils policy, mold damage was excluded from coverage because mold was not a named peril in the policy. *Id*. The court in *De Laurentis* reasoned that if a named peril caused the alleged mold, the damage was covered by the policy because this type of damage was not specifically excluded from coverage in the policy. *Id*. at 724-25.

¶ 16    Similarly, in the instant case, the terms "mold" or "fungi" or any similar wording are listed neither in the Exclusion nor in the definition terms. Liquidator contends that Legion issued a broad policy to exclude mold from coverage and that it did not have to enumerate the specific terms "mold" or "fungi" in the exclusion. While the policy does not need to specifically list the terms "mold" and "fungi," the intent to exclude coverage must be expressed in clear and unambiguous language. *Evanston Insurance Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660, 668 (Tex. 2008).

¶ 17    Here, the alleged intent to exclude mold-related claims was not clearly stated in the Exclusion. The Exclusion applies to claims for bodily injury caused by a "single, continuous,

or intermittent or repeated exposure to, ingestion of inhalation of or absorption of any Health Hazard." The Policy defines "Health Hazard" as "any chemical, alkali, radioactive material, or any other irritant or any pollutant or other substance, product, or waste product, or the fumes or other discharges or effects therefrom, whether liquid, gas or solid, alleged or determined to be toxic or harmful to the health of any person, plant or animal." Furthermore, the Policy defines "Pollutant" as "any smoke, vapors, soot, Electromagnetic Field Radiation, fumes, acids, alkalis, chemicals, liquids, solids, gases, radiation, thermal pollutants, noise or sound of any kind or any other irritant or contaminant."

¶ 18    The circuit court held that, due to its irritating and toxigenic effects and because it poses health risks to humans, mold comes within the definition of the Exclusion under the terms of the Policy. The circuit court, when denying the Claimants' motion for reconsideration, relied on the second part of the Exclusion which precluded coverage for bodily injury caused by "ingestion of inhalation of or absorption of any Health Hazard." Furthermore, the circuit court held and the Liquidator argues that we should read mold in the descriptions of the terms "pollutant" and "Health Hazard." However, both the second part of the Exclusion and the definitions employ broad and general language such as: "any," "alleged," "chemical," "substance," "irritant," "liquid," "gas," and "solid." Applying these broad and generic terms, as the circuit court did, anything–solid, liquid, gas or substance–that would potentially cause injury to a person would be excluded from coverage, making the Policy illusory. See *State Farm Lloyds v. Marchetti*, 962 S.W.2d 58, 61 (Tex. App. 1997) ("While broad, general provisions for coverage under a policy may be limited by specific exclusions, we cannot endorse broad, general exclusions which seek to render illusory narrow and specific provisions of coverage.").

¶ 19    Therefore, the circuit court erroneously construed the definitions and the language of the Exclusion broadly to include mold-related claims when any policy exclusion, regardless of its label, that excludes coverage must be narrowly construed. See *Gilbert Texas Construction, L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010). Moreover, because the exceptions or limitations on liability are strictly construed against the insurer and in favor of the insured, we construe the Exclusion against the Liquidator and we find that the Exclusion does not bar recovery for Claimants' mold related injuries. *National Union Fire Insurance Co.*, 811 S.W.2d at 555.

¶ 20    The Liquidator's argument that Claimants' characterization of mold as a pollutant in their underlying negligence lawsuit is further evidence that the Exclusion included mold injuries is not persuasive. The duty to defend and the duty to indemnify " 'are distinct and separate duties.' " *Utica National Insurance Co. of Texas v. American Indemnity Co.*, 141 S.W.3d 198, 203 (Tex. 2004) (quoting *King v. Dallas Fire Insurance Co.*, 85 S.W.3d 185, 187 (Tex. 2002)). The duty to indemnify is established by the facts determined in the underlying suit and the actual terms of the policy. *D.R. Horton-Texas, Ltd. v. Markel International Insurance Co.*, 300 S.W.3d 740, 744 (Tex. 2009). Therefore, since the underlying suit established that the Claimants were entitled to recovery for their mold injuries sustained due to Reyna's negligence, the language of the Policy controls in the instant case and not the Claimants' previous pleadings or characterizations in the underlying suit. Thus, we are bound by the Policy's terms, and the Liquidator's argument has no bearing in the instant matter. It is undisputed that the Policy's Exclusion did not include the words "mold" or "fungi" although

Legion could have easily inserted the words in the Policy's Exclusion to avoid different interpretations.

¶ 21    The Liquidator cite*s Lexington Insurance Co. v. Unity/Waterford-Fair Oaks, Ltd.*, No. CIV.A. 399CV1623D, 2002 WL 356756 (N.D. Tex. Mar. 5, 2002), as support for its contention that mold-related claims are excluded from the Policy's coverage. In *Lexington*, the court found that a Pollution and Contamination Exclusion barred coverage from a mold claim. *Id*. at *2. The exclusion in *Lexington* provided that the policy did "not cover loss or damage caused by, resulting from, contributed to or made worse by actual, alleged or threatened release, discharge, escape or dispersal of CONTAMINANTS or POLLUTANTS, all whether direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any physical damage insured by this policy." *Id.* The policy definition of "contaminants" and "pollutants" in *Lexington* included " 'bacteria, *fungi*, virus or other hazardous substances.' " (Emphasis added.) *Id*. Since mold is fungi, the court in *Lexington* held that the loss caused by mold to several floors of an apartment complex was specifically excluded from coverage. *Id*. at *3-4.

¶ 22    The Liquidator's reliance on *Lexington* is misplaced because unlike *Lexington*, in the instant case, the Policy does not, on its face, exclude from coverage mold or fungi claims. Unlike *Lexington*, here, neither the Exclusion nor the definitions list either "mold" or "fungi." While the court in *Lexington* held that mold was a pollutant or contaminant, it did so because the definitions of those terms specifically listed fungi as a pollutant and a contaminant and, therefore, triggered the application of the exclusion. *Id*. at *3. To the contrary, in the instant case, the exclusion does not list "mold" or "fungi," and, therefore, the Liquidator's reliance on *Lexington* is misplaced.

¶ 23    The Liquidator also relies on *American Equity Insurance Co. v. Castlemane Farms, Inc.*, 220 F. Supp. 2d 809, 814 (S.D. Tex. 2002). In *American Equity Insurance Co. v. Castlemane Farms, Inc.*, the court held that damages caused by the insured's rupturing of a salt water disposal pipeline fell within the policy's total pollution exclusion. *Id*. The exclusion provision at issue in *Castlemane Farms* stated that there was no coverage for loss " 'which would have not occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.' " *Id*. at 813. The policy in *Castlemane Farms* defined pollutants as " 'any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemical and waste.' " *Id*. The *Castlemane Farms* court concluded that the exclusion applied because the discharge from the salt water disposal pipeline was " 'liquid waste.' " *Id*. at 814. The court also noted that salt water was a " 'contaminant' " when it was introduced accidentally onto property that was not meant to receive it. *Id*.

¶ 24    The Liquidator argues that just as the salt water in *Castlemane Farms*, the mold in the instant case was somewhere it should not have been, and, therefore, mold is a contaminant specifically excluded by the Policy. The Liquidator's preferred interpretation, however, is too broad. First, the court in *Castlemane Farms* focused on the language of the policy that clearly defined " 'irritant or contaminant' " to include " 'any Liquid *** chemicals [or] waste.' " *Id*. The court in *Castlemane Farms* specifically noted that "[t]here can be no dispute that the contents of a 'salt-water disposal pipeline' is within the category of 'liquid waste.' " *Id*. In addition, although mold comes from water, the court in *Castlemane Farms* specifically identified *salt water* as a contaminant and not the term "water," "mold," or "fungi." See *Allen*

*v. St. Paul Fire & Marine Insurance Co.*, 960 S.W.2d 909, 912 (Tex. App. 1997) (noting that water in its ordinary state cannot be a contaminant). Therefore, *Castlemane Farms* does not support the Exclusion's applicability to the Claimants' claim.

¶ 25    The Liquidator and the circuit court also cite *Hirschhorn v. Auto-Owners Insurance Co.*, 2012 WI 20, ¶¶ 41-43, 338 Wis. 2d 761, 809 N.W.2d 529, where bat guano or bat feces was considered a pollutant under a pollution exclusion. In *Hirschhorn*, a vacation home became uninhabitable because bat guano–bat feces and urine–had accumulated in the walls and ceilings. The homeowner's insurer denied coverage, citing the pollution exclusion. *Id.* ¶¶ 6-7. The *Hirschhorn* exclusion listed examples of pollutants, including "waste." *Id.* ¶ 18. The court in *Hirschhorn* determined bat guano was "waste" within the meaning of the pollution exclusion. *Id.* The court identified its "primary inquiry" as "whether a reasonable person in the position of the insured would understand bat guano to be waste." *Id.* ¶ 34.

¶ 26    In the instant case, unlike *Hirschhorn*, where "waste" was listed in the pollution exclusion and a reasonable person in the position of the insured would understand bat guano as waste, mold or fungi do not fall under the category of "waste" as set out in the definition of "Health Hazard." Specifically, mold and fungi are not remotely similar to bat guano and a reasonable person would not necessarily understand mold to match any of the Exclusion terms in the same clear and unambiguous manner that "waste" included bat guano. Therefore, the Liquidator's and the circuit court's reliance on *Hirschhorn* is misplaced.

¶ 27    While not determinative, we also note that several liability and property insurance policies that Legion filed in the Illinois Department of Insurance clearly and unambiguously excluded mold or fungi from coverage by listing the terms in the exclusion sections of their policies while the Policy in the instant case does not. In addition, it appears that the Liquidator paid one other mold-related construction claim.

¶ 28    Having determined that the Exclusion does not preclude Claimants' claim under the Policy, we do not need to address Claimants' untimely alternative argument that the Liquidator may not enforce the conditions and exclusions of the Policy under Texas surplus lines law. The Liquidator had previously argued that no bodily injury occurred during the coverage period as required under the terms of the Policy in order to trigger coverage. This issue was not addressed in the circuit court's order. Therefore, we reverse the judgment of the circuit court disallowing Claimant's claim and we remand the case back to the circuit court for a determination of whether Claimants' bodily injuries occurred during the Policy's coverage period.

¶ 29                                    III. CONCLUSION

¶ 30    For the reasons stated, we reverse the judgment of the circuit court.

¶ 31    Reversed and remanded.